UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| REBECCA R. COOKS, | ) | CIV. 12-4177-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER REMANDING |
| | ) | DECISION OF COMMISSIONER |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Rebecca R. Cooks, seeks review of the Commissioner of Social Security's decision denying her claim for social security disability insurance (SSDI).[1] The Commissioner opposes the motion and moves the court to affirm the decision. The court remands.

**PROCEDURAL HISTORY**

On March 23, 2010, Cooks applied for SSDI alleging disability beginning March 6, 2009. AR 143-47.[2] The Social Security Administration denied Cooks's application. AR 87-89. Cooks requested reconsideration, which was subsequently denied. AR 93-95. Cooks, with the assistance of counsel,

---

[1] Under Fed. R. Civ. P. 25(d), Carolyn W. Colvin is automatically substituted for Michael J. Astrue. This action survives the substitution. 42 U.S.C. § 405(g).

[2] All citations to "AR" refer to the appropriate page of the administrative record.

requested a hearing before an Administrative Law Judge (ALJ). AR 98-99. After the hearing, the ALJ issued a decision finding that Cooks was not disabled and thus was not entitled to benefits. AR 27-38. Cooks then requested that the Appeals Council review the ALJ's decision along with new evidence, which request was denied. AR 1-6. Subsequently, Cooks commenced this action, requesting judicial review of the Commissioner's determination that she is not disabled. Docket 1.

**FACTS**

Cooks was born on June 3, 1953. AR 159. Cooks finished high school and completed two years of college in 1986, obtaining an associate's degree in business. AR 59, 165. Cooks has two grown children and recently remarried in June of 2010. AR 62.

During the last fifteen years, Cooks has worked in accounting and sales (1993-2000), at a flower shop (2000-2002), as a credit collections representative (2002-2006), as a welder (2006-2008), and in customer service and retention (2008-March 6, 2009). AR 175. Between 1996 and 2008, Cooks earned over $20,000 each year. AR 151. Cooks indicated that she worked full time until March 6, 2009. AR 175-180. Cooks stated that she had difficulty hearing customers in her last job, that the stress was difficult for her to handle, and that she struggled to interact professionally with customers, co-workers, and supervisors. AR 77. Additionally, she stated that she left her

welding job because it required too much time on her feet and she left her job at the flower shop "partially [due to] the walking around and lifting but it was also I didn't have [medical] insurance." AR 60. Cooks currently relies on her husband's disability benefits, food stamps, Section Eight housing benefits, and church food giveaways for support. AR 62.

In her SSDI application, Cooks claimed a disability based on bipolar disorder, depression, anxiety, panic attacks, hearing loss, right knee problems, fibromyalgia, chronic fatigue, migraines, and diabetes. AR 164.

## I. Physical Limitations

Cooks has a number of chronic physical limitations documented in the record. She has a history of obesity. As a result, Cooks had a gastric bypass in 1998 and subsequently lost a great deal of weight, although she gained some of it back recently. AR 63-64. Cooks underwent a right knee arthroplasty on May 29, 2009, to treat degeneration in that joint.[3] AR 238. Cooks went through physical therapy following the successful procedure, but she subsequently has reported knee pain on occasion. AR 262, 330.

Cooks has difficulty hearing. She started wearing bilateral hearing aids in 2008. AR 64. Cooks states that she can hear in a quiet setting, but she

---

[3] Arthroplasty is the "[c]reation of an artificial joint to correct advanced degenerative arthritis [or an] operation to restore as far as possible the integrity and functional power of a joint." *Stedman's Medical Dictionary* 161 (28th ed. 2006).

struggles to hear over the telephone or in an environment with other sounds. AR 64-65. Cooks also suffers from headaches, although the cause is unknown. *See, e.g.*, AR 309. She has controlled her headaches with medication. *Id.* In addition, Cooks has complained of fatigue and inability to sleep, and she has been diagnosed with fibromyalgia.[4] AR 404, 407. Cooks has taken a number of different medications to relieve pain and help her sleep. She also participated in a sleep study, which was inconclusive. AR 417.

Records from the Orthopedic Institute show that Cooks has complained of low back pain, knee pain, and neck pain. AR 622-32. Doctors diagnosed Cooks with polyneuropathy[5] with an unknown cause (AR 623), advanced spondylosis[6] (AR 627), and bilateral knee problems (AR 624). Cooks underwent acupuncture, massage therapy, and electrical muscle stimulation. She requested a gym membership. AR 623. She was also given an epidural injection, but she preferred more conservative treatments. AR 625. She reported that those treatments gave her relief. AR 623, 624.

---

[4] Fibromyalgia is a "syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances; the cause is unknown." *Stedman's Medical Dictionary* 725 (28th ed. 2006).

[5] Polyneuropathy is "[a] disease process involving a number of peripheral nerves (literal sense) [or a] nontraumatic generalized disorder of peripheral nerves, affecting the distal fibers most severely . . . ." *Stedman's Medical Dictionary* 1536 (28th ed. 2006).

[6] Spondylosis is the "[d]egeneration or deficient development of a portion of the vertebra . . . ." *Stedman's Medical Dictionary* 1812 (28th ed. 2006).

## II.  Mental Limitations

Cooks has been diagnosed with depression, anxiety, panic attacks, bipolar disorder, and posttraumatic stress disorder (PTSD). *See* AR 404, 440, 463, 475 (diagnosing depression, PTSD, and bipolar disorder); AR 417, 428, 451 (diagnosing depression and PTSD); AR 542, 545, 546, 549, 552 (diagnosing major depressive disorder, PTSD, and panic disorder); AR 596 (diagnosing anxiety disorder); AR 597, 610 (diagnosing bipolar disorder); AR 611 (diagnosing anxiety disorder, bipolar disorder, depression, and panic disorder); AR 615 (diagnosing depression, bipolar disorder, panic disorder, anxiety disorder, polysubstance dependence in full remission, and PTSD). Two state sources diagnosed Cooks with intermittent explosive disorder and mood disorder. AR 523, 531. Cooks reports a history of physical and sexual abuse. *See, e.g.*, AR 613. Cooks has taken a long list of medications to control her conditions and symptoms. *See, e.g.*, AR 608-09 (listing current and past medications). Frequently, Cooks's doctors indicated that she was alert, oriented, well-groomed, and behaved appropriately. Some doctors expressed concern that Cooks was overmedicated, which might contribute to her fatigue. AR 381, 392.

## ALJ DECISION

On September 20, 2011, the ALJ issued a decision denying Cooks's application for SSDI. AR 24-38. The ALJ used the sequential five-step

evaluation process.[7] At the first step, the ALJ determined that Cooks had not engaged in substantial gainful activity since March 6, 2009. AR 30. At step two, the ALJ found that Cooks had the following severe impairments: hearing impairment, fibromyalgia, mild right foot drop,[8] and obesity. *Id.* At step three, the ALJ determined that Cooks did not have an impairment or combination of impairments that met or equaled a listed impairment. AR 34. At step four, the ALJ concluded that Cooks had the residual functional capacity (RFC) to perform a range of light and sedentary work.[9] *Id.* Based on the testimony of a Vocational Expert (VE), the ALJ decided Cooks could perform her past relevant

---

[7] An ALJ must follow " 'the familiar five-step process' " to determine whether an individual is disabled: "(1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work." *Martise v. Astrue*, 641 F.3d 909, 921 (8th Cir. 2011) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); *see also* 20 C.F.R. § 416.920 (detailing the five-step process).

[8] Foot drop is a "[p]artial or total inability to [lift up] the foot, as a consequence of which the toes drag on the ground during walking unless a steppage gait is used . . . [it] has many causes, including disorders of the peripheral and central nervous systems . . . ." *Stedman's Medical Dictionary* 756 (28th ed. 2006)

[9] The ALJ assessed Cooks's RFC as follows: "[Cooks] is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. [Cooks] is limited to sitting for a total of 6 hours of an 8-hour workday. [Cooks] is limited to standing and/or walking for a total of 2 hours of an 8-hour workday. [Cooks] is limited to occasionally stooping, kneeling, crouching, and crawling; but never balancing or climbing. [Cooks] would have problems on the telephone discriminating languages and difficulty hearing during conversation with customers."

work as a bookkeeper as it was actually performed. *Id.* at 37-38. Therefore, the ALJ concluded that Cooks was not disabled.

## STANDARD OF REVIEW

The court must uphold the ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) ("The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). "Substantial evidence is 'less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' " *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Maresh v. Barnhart*, 438 F.3d 897, 898 (8th Cir. 2006)). In determining whether substantial evidence supports the ALJ's decision, the court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010) (internal citation omitted). If substantial evidence supports the Commissioner's decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary position or because the court would have determined the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

The Commissioner must support her decision with substantial evidence in the record as a whole. *Evans v. Shalala*, 21 F.3d 832, 833 (8th Cir. 1994).

7

The 'substantial evidence in the record as a whole' standard is not synonymous with the less rigorous 'substantial evidence' standard." *Burress v. Apfel*, 141 F.3d 875, 878 (8th Cir. 1998). " 'Substantial evidence on the record as a whole' . . . requires a more scrutinizing analysis." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987) (citation omitted).

In determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole, the court reviews the entire administrative record and considers six factors: (1) the ALJ's credibility determinations; (2) the claimant's vocational factors; (3) medical evidence from treating and consulting physicians; (4) the claimant's subjective complaints relating to activities and impairments; (5) any third-party corroboration of claimant's impairments; and (6) a vocational expert's testimony based on proper hypothetical questions setting forth the claimant's impairment(s). *Stewart v. Sec'y of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (citing *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are reviewed de novo with deference accorded to the Commissioner's construction of

the Social Security Act. *Id.* (citing *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008)).

**DISCUSSION**

**I.    Step Two**

Cooks argues that the ALJ did not properly analyze whether certain physical and mental limitations were severe medically determinable impairments at step two, which led to the omission of those impairments from her RFC. At step two, Cooks must establish whether she has a medically determinable physical or mental impairment that is severe. 20 C.F.R. § 416.920(a)(4)(ii); *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) ("It is the claimant's burden to establish that [her] impairment or combination of impairments are severe.") (citation omitted). A severe impairment must "significantly" limit the claimant's physical or mental ability to do basic work activities, 20 C.F.R. § 416.920(c), such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, understanding, remembering simple instructions, using judgment, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 416.921(b)(1)-(6). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs. 20 C.F.R. § 404.1521(b).

### A. Physical Limitations

Cooks asserts that the ALJ failed to consider her spondylosis and polyneuropathy to be medically determinable impairments, and therefore omitted those conditions from her RFC. Docket 12 at 29. Notably, Cooks does not contend that the ALJ erred by finding that those conditions were not severe; her alleged error relates only to the omission of spondylosis and polyneuropathy from her RFC. Therefore, the only error Cooks asserts at step two with respect to her physical limitations is a failure to classify Cooks's spondylosis and polyneuropathy as medically determinable impairments.

The ALJ did mention the objective medical evidence relating to spondylosis and polyneuropathy in her step two analysis. AR 30. Additionally, the ALJ discussed the limitations from spondylosis and polyneuropathy in her RFC discussion. AR 34-35. Based on the ALJ's decision, the ALJ must have considered Cooks's spondylosis and polyneuropathy to be medically determinable impairments at step two, but the ALJ found they were not severe. Because Cooks does not challenge the severity determination of the ALJ's decision with respect to her spondylosis and polyneuropathy, the ALJ did not err at step two with respect to Cooks's physical limitations.

### B. Mental Limitations

Cooks contends that the ALJ incorrectly determined at step two that her mental limitations were not severe.

1. **Nardini Opinion**

Cooks contends that the ALJ improperly relied on Dr. Nardini's opinion in weighing the severity of Cooks's mental limitations. Specifically, Cooks argues that Dr. Nardini's licensing did not qualify him as an acceptable medical source.

"Acceptable medical sources are . . . [l]icensed or certified psychologists." 20 C.F.R. § 404.1513(a). Dr. Nardini has a Ph.D., but he was never a licensed or certified psychologist in South Dakota. Docket 18-1. Dr. Nardini was a licensed social worker. Docket 17 at 20 n. 14. Therefore, Dr. Nardini was not an acceptable medical source under the Commissioner's regulations.

Even though Dr. Nardini was not an acceptable medical source, the ALJ was still able to consider Dr. Nardini's report. In determining the severity of a mental impairment, an ALJ is not limited to only considering acceptable medical opinions. 20 C.F.R. 404 Subpt. P, App. 1, pt. A, § 12.00D(1)(c). "In addition to evidence from 'acceptable medical sources,' we may use evidence from 'other sources,' . . . to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to: [m]edical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . . ." SSR 06-03p. Furthermore, "[i]nformation from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be

11

evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may . . . provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* The ALJ was therefore allowed to rely on Dr. Nardini's opinion as an opinion from an "other source," and could properly consider Dr. Nardini's opinion in evaluating the severity of Cooks's mental limitations.

### 2. State Expert Opinion and Treating Physician Opinions

Cooks contends that the ALJ gave insufficient weight to the opinions of Dr. Zhao, Dr. Fuller, and Barbara Palmer, all treating sources, and Dr. Buchkoski, the non-examining state agency expert. According to Cooks, those sources suggest she has moderate mental limitations, rather than mild limitations as the ALJ concluded.

Cooks bases her argument on the global assessment of functioning (GAF) scores assigned to Cooks by Drs. Zhao and Fuller. Both gave Cooks GAF scores between 55 and 60, indicating moderate limitations. The Eighth Circuit has held that an ALJ is not bound to conform a claimant's RFC to a GAF score, though the score may be a helpful guide. *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010). Accordingly, the ALJ was not bound to accept the GAF scores as conclusive proof that Cooks's mental impairments were severe. Because the sole error Cooks alleges with respect to Drs. Fuller and Zhao

relates to the weight given to the GAF scores, the ALJ did not err in her consideration of those opinions.

Next, Cooks argues that the ALJ did not give appropriate weight to Palmer's opinion that Cooks had more than mild limitations. But Palmer's opinion is not as conclusive as Cooks suggests. Palmer observed that "insight is limited, judgment impaired, mild to moderate anxiety, mild to moderate depression, no suicidal thinking. . . . [Cooks has] once again lost her job and feels badly about that but is managing it appropriately." AR 555. The ALJ could conclude, from this opinion and the rest of the record, that Cooks had only mild mental limitations.

Finally, Cooks argues that the ALJ gave too little weight to a non-examining state agency expert, Dr. Buchkoski, in determining the severity of her mental limitations. The ALJ expressly discounted Dr. Buchkoski's opinion that Cooks had a moderate degree of limitation in concentration and understanding instructions and is only capable of simple tasks. The ALJ concluded that other parts of Dr. Buchkoski's opinion were inconsistent with that assessment, and that those limitations were inconsistent with Cooks's testimony and the detailed review of Cooks's treatment history listed in the ALJ's decision. The ALJ provided sufficient reasons for giving little weight to that part of Dr. Buchkoski's opinion.

The ALJ did not err in weighing the available evidence on the severity of Cooks's limitations. The ALJ's determination that Cooks's mental impairments are not severe is supported by substantial evidence in the record as a whole.

## II.     Step Four

### A.     RFC

Before an ALJ moves to step four, the ALJ determines the claimant's RFC. 20 C.F.R. § 404.1520(a)(4). A claimant's RFC "is the most [she] can still do [in a work setting] despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC assessment is an indication of what the claimant can do on a "regular and continuing basis" given the claimant's disability. 20 C.F.R. § 404.1545(b). "The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006). " '[T]o find that a claimant has the [RFC] to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.' " *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (citing *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)).

At step four, the ALJ determined that Cooks could perform a range of sedentary and light work. Based on her RFC, and the testimony of a VE, the

ALJ found that Cooks could perform her past job as a bookkeeper as it was actually performed, and therefore Cooks was not disabled.

### 1. Physical Limitations in RFC

Cooks argues that her physical limitations were improperly considered when determining her RFC. As discussed in Part IA, supra, the ALJ's decision shows that she did consider all of Cooks's medically determinable physical impairments, whether severe or nonsevere, when formulating Cooks's RFC. AR 34-37.

Cooks asserts that the ALJ improperly assessed Cooks's credibility when discounting the impact of her subjective complaints of pain from her medically determinable impairments. "[W]hen evaluating a claimant's credibility, in addition to considering the absence of objective medical evidence to support complaints of pain, an ALJ should consider a claimant's reported daily activities, the duration, frequency and intensity of his or her pain, precipitating and aggravating factors, medication, and functional restrictions." *Steed v. Astrue*, 524 F.3d 872, 875 n.4 (8th Cir. 2008) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). "The ALJ is not required to discuss methodically each *Polaski* consideration, so long as [she] acknowledged and examined those considerations before discounting [Cooks's] subjective complaints." *Id.* at 876 (internal quotation omitted). An ALJ's credibility determination is entitled to

deference because the ALJ is in a better position than a reviewing court to gauge credibility. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

The ALJ's credibility decision is supported by substantial evidence on the record as a whole. First, the ALJ detailed the medications Cooks has taken to control her pain and whether the medications worked. The ability to successfully control pain with medication can be inconsistent with an allegation of disabling pain. *Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009). Furthermore, if an impairment can be controlled through treatment or medication, it cannot be considered disabling. *Id.* (citing *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997)). The ALJ adequately documented the numerous instances in the record where Cooks reported conservative treatments or medication worked well to control her pain.

The ALJ also noted Cooks's own statements on different occasions about the duration, frequency, and intensity of her pain. For example, the ALJ noted that "[c]linic records indicate complaints of pain . . . in May 2010, but 0 pain in June 2010 . . . ." AR 36. The record contains other instances where Cooks reported that she felt "pretty good" or that she did not appear to be in distress. The ALJ properly considered those inconsistent reports about the duration, frequency, and intensity of pain in determining Cooks's credibility.

Finally, the ALJ discussed Cooks's daily activities and functional restrictions, and found them inconsistent with an allegation of disabling pain.

Specifically, the ALJ noted that Cooks requested a note from a physician regarding a gym membership. The ALJ also considered evidence from Cooks's sister about Cooks's daily activities and found the extent of those activities undermined Cooks's subjective complaints of pain.

The ALJ adequately assessed Cooks's credibility under the *Polaski* factors. Based on the medical opinions, the medical records, Cooks's testimony, and the other evidence in the record, the ALJ determined that Cooks's complaints of disabling pain were not credible. Cooks's RFC is supported by substantial evidence in the record as a whole with respect to Cooks's physical limitations.

### 2. Mental Limitations in RFC

At step two, the ALJ found that Cooks's medically determinable mental impairments were not severe. The RFC must include the limitations from all medically determinable impairments, regardless of whether they are considered severe. SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' "). The ALJ failed to include Cooks's mental limitations in developing her RFC.

In contrast to the ALJ's extensive and well-supported discussion of Cooks's mental limitations at step two, the ALJ's written opinion at step four is notably devoid of any reference to Cooks's mental limitations. Given Cooks's numerous mental impairments, her mental limitations should be a primary

17

consideration in determining her RFC. Here, it is not clear whether they were considered at all. Even if the ALJ did consider Cooks's mental limitations, this court has no way to review the ALJ's finding. A court should not be left to "speculate on what basis the Commissioner denied a . . . claim." *Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011). The omission of Cooks's mental limitations from her RFC requires remand in this case.

### B. Previous Relevant Work Determination

Cooks argues that the ALJ erred in finding that she could perform her previous job as a bookkeeper at a flower shop. She also introduces evidence that her job was not truly a bookkeeping job but involved other, more physically demanding, tasks. Because the court is remanding this matter to the Commissioner to reconsider Cooks's RFC, it would be premature for the court to decide whether Cooks can perform her past relevant work. On remand, the ALJ should determine Cooks's RFC, including her mental limitations, and then consider whether Cooks can perform her past relevant work.

Additionally, because the court is remanding this matter to the Commissioner for reconsideration of Cooks's RFC, it is unnecessary for the court to determine at this time whether the ALJ sufficiently explained the balance limitations in the original RFC for the purposes of establishing the range of work Cooks is able to perform.

**CONCLUSION**

Where the ALJ's findings are insufficient or inadequate, remand is appropriate. Following review of the record, the court finds that the ALJ erred in determining Cooks's RFC because the ALJ did not incorporate Cooks's nonsevere medically determinable mental conditions. On remand, the ALJ should determine Cooks's RFC including her mental limitations and should determine, based on that RFC, whether Cooks can perform her past relevant work or other work in the national economy. Accordingly, it is

ORDERED that the Commissioner's decision denying Cooks's claim for benefits is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated October 22, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE